3:20 mj 152 (salm)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FEB 13 2020 PM3:40
FILED-USDC-CT-NEW_HAVEN

IN THE MATTER OF THE ARREST OF
MICHAEL MEDINA                          :                February __, 2020

                                        :                **Filed Under Seal**

_____       :

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jonathan LaFrance, a Special Agent with the Pension Benefit Guaranty Corporation,

Office of Inspector General, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.  I am a criminal investigator (Special Agent) with the Pension Benefit Guaranty

Corporation Office of Inspector General (PBGC-OIG).  PBGC is a federal corporation within the

U.S. Department of Labor that is headquartered in Washington, D.C.  Congress established the

PBGC through the Employee Retirement Income Security Act of 1974 (ERISA) to insure the

defined benefit pensions of workers and retirees in private-sector pension plans.  PBGC runs two

programs, which are operated and financed separately, to insure different types of defined benefit

pension plans:  single-employer plans and multi-employer plans.  PBGC pays monthly

retirement benefits, up to legal limits, to more than 861,000 retirees in over 4,900 failed single-

employer plans.  PBGC also provides financial assistance to more than 70 multi-employer plans

covering over 62,000 retirees.  Overall, PBGC protects the retirement security of nearly 37

million American workers, retirees, and beneficiaries.

2.  I have been a Special Agent with PBGC-OIG from July 2018 to present day.  I am a

sworn federal law enforcement officer and have authority to investigate violation of law of the

United States Code, and to execute warrants issued under the authority of the United States. I am

1

responsible for conducting investigations into various white-collar crimes including theft of government money, wire fraud, money laundering, and identity theft.  I have graduated from the Criminal Investigator Training Program and the Inspector General Investigator Training Program at the Federal Law Enforcement Training center (FLETC) in Glynco, Georgia. Prior to becoming a Special Agent with PBGC-OIG, from November 2016 to July 2018, I was an investigator and operations manager for the Department of Homeland Security (DHS), Federal Emergency Management Agency (FEMA), Fraud and Internal Investigations Division. From September 2015 to November 2016, I was a Special Agent-in-Charge, with the Office of Personnel Management (OPM), National Background Investigations Bureau (NBIB).  From September 2012 to September 2015, I was an investigator (Special Agent) with OPM, NBIB (Per Executive Order 13869, OPM, NBIB was transferred to the Department of Defense and has been renamed the Defense Counterintelligence and Security Agency).  From August 2006 to November 2011, I was a sworn police officer for the Metropolitan Police Department, Washington D.C., where I made a multitude of arrests for violation of D.C. code.

3.  I make this Affidavit in support of an application for a criminal complaint and arrest warrant for MICHAEL W. MEDINA (MEDINA) for violation 18 U.S.C. § 641, theft of government funds.  MEDINA is a 51-year-old, U.S. citizen, who now resides in Woodbury, CT.

4.  The facts of this Affidavit come from my personal observations, my training and experience, and information provided to me by other law enforcement officers and individuals.

5.  This Affidavit is intended to show there is sufficient probable cause for the charges in the complaint and does not set forth all of my knowledge about this matter.  I have set forth only the facts I believe are necessary to establish probable cause that MEDINA has committed a violation of 18 U.S.C. § 641.

## STATUTORY AUTHORITY

6.  This investigation concerns alleged violations 18 U.S.C. § 641, which provides that whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another or without authority, sells, conveys, or disposes of any record, voucher, money or thing of value of the United States or any department or agency thereof, shall be fined or imprisoned or both.

## PROBABLE CAUSE

7.  The investigation revealed that MEDINA converted, for personal use, approximately $37,000 in PBGC and Social Security funds intended for his deceased father, Richard MEDINA. Richard MEDINA's death was never reported to PBGC or the Social Security Administration.

8.  *Facts*

   a.  In February 2017, the PBGC-OIG Investigations Division requested from PBGC a list of all pension recipients in pay status.  Subsequently, PBGC-OIG contacted the U.S. Department of Health and Human Services, Office of Inspector General, to determine if any of the recipients had not received Medicare services for the last three years and/or if they were listed as deceased in the Medicare system. The data matching identified PBGC participant Richard W. MEDINA as deceased.

   b.  PBGC-OIG obtained a copy of the death certificate for Richard MEDINA from the State of Connecticut, Department of Public Health, which confirmed he died on November 25, 2015.  PBGC records show that Richard MEDINA began receiving pension payments from PBGC in December 2008.  From December 1, 2015 to April 1, 2019, PBGC continued to make monthly electronic deposits of $326.30 into Richard MEDINA's Bank of America checking account.  Since Richard MEDINA's death in November 2015, PBGC has made deposits totaling approximately,

3

$13,052.00. [Note: Richard MEDINA has a Straight Life Annuity pension, therefore, there are no survivor benefits.]. PBGC was also never notified of Richard MEDINA's death.

c.  On April 1, 2019, PBGC-OIG served an Inspector General subpoena on the Bank of America checking account in Richard MEDINA's name. The records revealed that PBGC deposited $326.30 per month into this account since his death, in November 2015, to April 1, 2019. The PBGC monthly disbursement was one of three sources of funds being deposited into the account; the second being Social Security Administration benefits of $1385.00 per month; and the third being IAM National Pension Fund of $466.00 per month.

d.  The Bank of America financial statements disclosed that this account was jointly owned between Richard W. MEDINA and Vera A. MEDINA (deceased as of 6/11/2009). The records also show that, every month, from December 1, 2015 to April 1, 2019, PBGC and SSA electronically-deposited funds were being withdrawn via automatic draft payment to various companies and creditors. There were two companies consistently withdrawing funds from the account since December 2015. Select Portfolio Servicing, Inc., a mortgage servicer, was auto-drafting about $969.00 per month; and Nationwide Insurance was auto-drafting about $268.00 per month.

e.  Withdrawals after December 1, 2015 attributable by name to Michael W. MEDINA, son of Richard MEDINA, total $1,876.26; these withdrawals are bill pay transactions from CCB Exchange and The General Insurance Company.

f.  According to the financial statements, on or around April 11, 2017, a Frontier Communications account (19822558031) was opened in Richard MEDINA's name

4

· and the bill for this service was paid electronically directly from the Bank of America account.  The total amount withdrawn from Frontier Communications was $301.72 from April 11, 2017 to August 16, 2017.

g.   On or around April 20, 2017, a Sprint PCS account was opened in Richard MEDINA's name and an electronic bill pay was set up to deduct monthly payments directly from the Bank of America account.  The total amount withdrawn from Sprint PCS was $1018.52 from April 20, 2017 to August 29, 2017.

9.  *Michael MEDINA Interview*

a.   On May 22, 2019, your affiant and SA Sheila Cabrera of the Social Security Administration (SSA) OIG conducted an in-person interview with MEDINA at the McDonald's restaurant located at 100 Main Street North, Southbury, CT  06488.

b.   MEDINA was initially asked if he had access to the Bank of America (BoA) account owned by his deceased mother (Vera MEDINA) and father (Richard MEDINA), where the direct deposits from PBGC and SSA were being disbursed.  MEDINA originally stated he had no knowledge of this account.

c.   MEDINA was presented with financial documents from the account that show the monthly BoA statements were being mailed to his previous home address of 30 Clyde Street, Oakville, CT, since at least October 2014.  MEDINA stated that he never opened the statements because the account was not in his name.  MEDINA was then presented with detailed information in the financial statements showing that there were new creditor accounts (specifically, those detailed above in ¶¶ 8e-8g), opened after December 2015, that were directly debiting funds from this BoA account on his behalf.

d.  After reviewing the documents, MEDINA stated that he accidently used this account to pay various bills to include Eversource Utility, Sprint (cell phone), Frontier (internet provider), CCB Exchange, The General Auto Insurance, and the mortgage payments for his former residence at 30 Clyde Street, Oakville, CT.  Regarding the use of his deceased mother and father's BoA account for paying personal bills, MEDINA stated "I don't know why I did that purposefully."

e.  MEDINA confirmed that the mortgage payments for his residence were being automatically withdrawn from the BoA account prior to his father's death.  However, he admitted that he continued to allow PBGC and SSA funds to be automatically withdrawn by the mortgage company after his father's death.

f.  MEDINA was asked why he never reported his father's death to Bank of America, to any company withdrawing funds from the BoA account, or to any U.S. government entity.  MEDINA simply stated he did not have a copy of the death certificate and was going through a hard time.  However, MEDINA was the informant on Richard MEDINA's death certificate issued from the State of Connecticut, Department of Public Health.

g.  MEDINA confirmed that he was the only one with access to the account and that he is the only surviving child of Richard and Vera Medina.

h.  MEDINA expressed remorse regarding personal use of PBGC and SSA funds intended for his deceased father and stated that he wanted to reimburse the federal government for the funds he used for personal gain.

CONCLUSION

10. Based on the foregoing facts, I respectfully submit that there is probable cause to believe,

and I do believe, that MEDINA violated 18 U.S.C. § 641, theft of government funds.  From

approximately December 1, 2015 to April 1, 2019, MEDINA personally expended PBGC and

SSA funds, intended for his deceased father, totaling approximately $37,000.  I respectfully

request that the Court authorize the complaint and issue a warrant for the arrest of MEDINA.


Respectfully submitted,


Jonathan LaFrance
Special Agent
Pension Benefit Guaranty Corporation
Office of Inspector General


Singed and sworn before me this ___13th___ day of February, 2020.

___/s/ Sarah A. L. Merriam, USMJ

HONORABLE SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF CONNECTICUT